IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Action No. 17-cv-01505-LTB

LISA LYNN WALKER,

       Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

       Defendant.

---

## ORDER

---

Plaintiff Lisa Lynn Walker appeals from the Social Security Administration ("SSA") Commissioner's final decision denying her application for disability insurance benefits, filed pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq., and her application for supplemental security income, filed pursuant to Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–1383c. Jurisdiction is proper under 42 U.S.C. § 405(g). Oral argument would not materially assist me in the determination of this appeal.

After consideration of the parties' briefs, as well as the administrative record, I REVERSE and REMAND the Commissioner's final order for further proceedings.

## I.    STATEMENT OF THE CASE

Plaintiff is a 40 year-old woman with a ninth grade education who has performed work as an office administrator and caretaker. [Administrative Record

("AR") 208, 284] She seeks judicial review of SSA's decision denying her application for disability insurance benefits and supplemental security income. Pl.'s Br., ECF No. 16 at 1. Plaintiff filed her applications in May 2014 alleging that her disability began in March 2014. [AR 208, 219]

The applications were initially denied in July 2014. [AR 89, 100] The Administrative Law Judge ("ALJ") conducted two evidentiary hearings and issued a written ruling on February 4, 2016. [AR 13–26, 31–79] In that ruling, the ALJ denied Plaintiff's applications on the basis that she was not disabled because she had the ability to perform her past relevant work. [AR 25–26] The SSA Appeals Council subsequently denied Plaintiff's administrative request for review of the ALJ's determination, making SSA's denial final for the purpose of judicial review. [AR 1–4]; *see* 20 C.F.R. §§ 404.981, 416.1481. Plaintiff timely filed her Complaint with this court seeking review of SSA's final decision. ECF No. 1.

## II.    Background

### A.  Relevant Medical History

In her application, Plaintiff claimed disability due to a back surgery, failed back surgery syndrome, lumbar radiculopathy, chronic pain, numbness in her right foot and left shin, and sacroiliitis. [AR 81] Plaintiff had a lumbar laminectomy in 2006. [AR 388] In August 2012, Plaintiff had an MRI of her lumbar spine in which nurse practitioner Kimberly Dufraux noted that Plaintiff had marked improvement compared to a 2006 MRI, but still had "small extrusions into the bilateral foramina with abutment of the [existing] L5 nerves bilaterally" and her L5-S1 remained at its "worst level." [AR 392]

Plaintiff began to see Brian Fuller, M.D. concerning her back pain. [AR 387] Dr. Fuller noted a differential diagnosis of low back pain to include "facet pain, failed back surgery syndrome and discogenic pain," a differential diagnosis of buttock pain to include "sacroiliac is, piriformis syndrome and greater trochanteric bursitis," and a differential diagnosis of worsening numbness to include "radiculopathy, post laminectomy syndrome and mononeuropathy." [AR 388] Among other suggestions, Dr. Fuller noted that Plaintiff would be scheduled for a variety of injections and nerve and branch blocks. [*Id.*] These injections and blocks continued until 2015. [*See* AR 352–85, 752–91] These procedures included sacroiliac joint injections, posterior sacral ligament trigger point injections, transpiriformis sciatic nerve blocks, greater trochanteric bursa injections, and lumbar medial branch nerve blocks. [*Id.*]

Dr. Fuller repeatedly noted that Plaintiff had "80% relief with previous diagnostic medial branch blocks" or "90% improved low back pain, buttock pain and right lower extremity pain following lumbar medial branch neurotomy and sacroiliac joint injections." [*See e.g.*, AR 351, 353, 365, 373, 754–55, 766–68, 771, 781, 783] At one point, Dr. Fuller noted that Plaintiff "describes a 100% improved right-sided low back pain but continued left sided low back pain following right lumbar medial branch neurotomy[,] a 100% improved left buttock pain and 80% improved right buttock pain following [a] bilateral sacroiliac joint injection." [AR 370]

Throughout this time, Plaintiff continued to see Ms. Dufraux. Ms. Dufraux

noted that Plaintiff made complaints of hip pain, knee pain, and her toes "tingling." [AR 408, 412] Plaintiff noted to her concerns on the efficacy of the injections and was using morphine, Fentanyl, and oxycodone to ameliorate pain. [AR 401, 404, 408] Ms. Dufraux prescribed medicine to prevent spasms as Plaintiff complained of a burning sensation in her nerves and Ms. Dufraux wrote that Plaintiff was to have the nerves cauterized. [AR 396–97, 400] Ms. Dufraux also began to wean Plaintiff off the opioid medications. [AR 401]

Numbness and tingling continued, spreading to her buttocks, hands, and toes. [AR 702] A month later, Ms. Dufraux noted that Plaintiff felt better and had improvements on her joint and back pain. [AR 699] Plaintiff was additionally prescribed Wellbutrin and clonazepam related to a diagnosis of anxiety. [AR 401, 699] On referral from Ms. Dufraux, Plaintiff received a second opinion at the Colorado Comprehensive Spine Institute. [AR 718–21] From this exam, Plaintiff noted to Ms. Dufraux that she indeed thought she may have fibromyalgia. [AR 690] Plaintiff began to take the nonepileptic Lyrica regarding fibromyalgia, which was added to her list of maladies. [681, 720]

Plaintiff's pain increased again and she worried the injections were not working. [AR 674, 677] Plaintiff had an MRI which showed a back sprain, and continued to complain of pain and numbness around her body. [AR 646, 650, 665, 669] She continued injections and began physical therapy. [AR 650, 669] A few months later, Plaintiff stopped physical therapy "as this makes her cry." [AR 646] Over the proceeding months, Plaintiff expressed concern as to the length of the

effectiveness of the injections and noted pain in her right elbow, tailbone, and lower back. [AR 475, 539, 554] She received injections for the elbow pain and had an MRI performed, where it was noted that there was a "small interstitial tear of the common extensor tendon origin with mild to moderate underlying tendinosis [and] moderate irregular scarring of the proximal lateral ulnar collateral ligament." [AR 729, 753]

### B. Hearing Testimony

In the first hearing, Plaintiff began by explaining her current job performing simple respite care six hours per week and expressed concern that she would lose this job because of her conditions. [AR 38–39] She stated that she was planning on receiving more injections, but there was a miscommunication with the doctor administering them. [*Id.*] She added that the injections merely dulled her pain and generally, on a scale from one-to-ten, her pain was at a five. [AR 40] She stated that she drove periodically, as little as possible, due to her pain. [AR 41] She described her areas of pain, including her lower back, upper back spasms, knee pain, radiating left leg pain, and numbness in her feet. [AR 42] When asked what made her pain worse, she responded that

> Sitting for more than half an hour is -- is not good. Just a lot of activity bending over trying, you know, I can't push a regular vacuum. A lot of things make me hurt. I have to be calculating everything that I do to determine how much pain it's going to cause. I mean just driving up here today and having to drive home, I'm probably going to spend a good portion of tomorrow down because the pain from doing this driving is going to wreck me.

[AR 42–43] She reiterated her difficulty sitting and standing and that she best handled pain in a recliner or laying down. [AR 43–44] She stated that she asked Ms.

5

Dufraux for a referral to a second opinion on her pain. [AR 45] In this second opinion, Plaintiff said that she may have fibromyalgia and was subsequently prescribed Lyrica which helped with the "weird little mystery pains," but did not help with her back pain. [AR 45–46] Plaintiff confirmed she is on antidepressants and that she has insomnia from her pain. [AR 47] The ALJ asked if Plaintiff cried when she performed her current job in apparent response to her crying during the hearing. [AR 47–48] Plaintiff's counsel commented that he was focusing on Plaintiff's back pain because there was not definitive testing of fibromyalgia. [AR 48] Plaintiff spoke about her elbow pain and that an MRI showed a tear in the tendon and irregular scaring on a ligament. [AR 48–49]

Plaintiff's counsel questioned Plaintiff about her limitations and she stated that it was difficult for her to lift over 15 pounds and that it was difficult for her to use a cellphone or write because of her arm pain. [AR 50] Concerning her home life, Plaintiff said that she could vacuum and would sit on the floor to assist her roommate in emptying the dishwasher, but could not do anything outside. [AR 51] She stated she could cook less than she used too and focused on microwaved or processed food or her neighbor would bring her meals. [AR 52] She added that she took her great niece to school when needed and she could do light grocery shopping, but generally depended on her roommate for these tasks when he was available. [AR 52]

Plaintiff spoke to an "exceptionally rough" experience with her consultative examiner.  She explained that she had to drive a long way to get to the examiner's

office and that he would not let her lay on the exam table to relieve her back pain. [AR 53–54] She added that the examiner excessively hit her elbow when doing the examination, leading her to cry from pain. [AR 54] The hearing adjourned as the ALJ needed additional records from Dr. Fuller. [AR 59]

A few weeks later, a second hearing occurred. [AR 64] Plaintiff contested the repeated notation in Dr. Fuller's records concerning "90% improvement from different procedures." [AR 65] She stated that she was never asked if certain procedures were working and only had a treatment conversation on the first time she visited Dr. Fuller. [AR 65] Therefore, she thought that Dr. Fuller was simply formulaically adding the notation without justification. [*Id.*] She felt that the procedures took away some of the sharp pain but were decreasing in effectiveness. [AR 67] She said that by no means was there 90 percent relief, and it was likely not 50 percent and that the records were "shocking" to her. [*Id.*]

She expressed additional concern about record retrieval and accuracy, injection scheduling, and other issues with Dr. Fuller. [AR 66–69] She explained that she had never seen the records before and did not ask for a follow up because she was unaware that she should see them and was "going through the motions." [AR 71]

### III.    LEGAL STANDARDS

#### A.  SSA's Five-Step Process for Determining Disability

A claimant is "disabled" under Title II of the Social Security Act if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). SSA has established a five-step sequential evaluation for determining whether a claimant is disabled and thus entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920.

At step one, SSA asks whether the claimant is presently engaged in "substantial gainful activity." *Id.* If she is, benefits are denied and the inquiry stops. 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, SSA asks whether the claimant has a "severe impairment"—that is, an impairment or combination of impairments that "significantly limits [her] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If she does not, benefits are denied and the inquiry stops. If she does, SSA moves on to step three, where it determines whether the claimant's impairments "meet or equal" one of the "listed impairments"— impairments so severe that SSA has determined that a claimant who has them is conclusively disabled without regard to the claimant's age, education, or work experience. 20 C.F.R. §§ 404.1520(d), 416.920(d). If not, SSA goes to step four.

At step four, SSA determines the claimant's residual functional capacity ("RFC")—that is, what she is still able to do despite her impairments—and asks whether the claimant can do any of her "past relevant work" given that RFC. 20 C.F.R. §§ 404.1520(e), 416.920(e). If not, SSA goes to the fifth and final step, where it has the burden of showing that the claimant's RFC allows her to do other work in the national economy in view of her age, education, and work experience.

20 C.F.R. §§ 404.1520(g), 416.920(g).

In contrast with step five, the claimant has "the burden of establishing a prima facie case of disability at steps one through four." *Doyal v. Barnhart,* 331 F.3d 758, 760 (10th Cir. 2003).

## B. Standard of Review

My review concerns only whether SSA's factual findings are supported by substantial evidence and whether the correct legal standards were applied. *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015). With regard to the law, reversal may be appropriate when SSA fails to apply proper legal standards. *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014) (quoting *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994)). With regard to the evidence, I must "determine whether the findings of fact . . . are based upon substantial evidence, and inferences reasonably drawn therefrom. If they are so supported, they are conclusive upon the reviewing court and may not be disturbed." *Trujillo v. Richardson*, 429 F.2d 1149, 1150 (10th Cir. 1970).

"Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). The record must demonstrate that the ALJ considered all the evidence, but an ALJ is not required to discuss every piece of evidence. *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996). I examine the record as a whole and may not reweigh the evidence or substitute my judgment for that of the ALJ. *Flaherty v. Astrue*, 515 F.3d at 1070.

## IV.  THE ALJ'S RULING

In her ruling, the ALJ concluded under the first step that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of March 23, 2014. [AR 19] Under step two, the ALJ determined that Plaintiff had the severe impairments of degenerative lumbar disc disease with sacroiliitis and a history of back surgery, fibromyalgia, and right elbow epicondylitis. [AR 20]

The ALJ concluded under step three that the enumerated severe impairments did not meet or medically equal an impairment in 20 C.F.R., Pt. 404, Subpt. P, App. 1 (the "Listing"). [*Id.*] The ALJ found that Plaintiff had the RFC to perform light work except that she was limited in that she could

> [L]ift, carry, push and pull 20 pounds occasionally and 10 pounds frequently; sit for up to 2 hours at a time and 8 hours in an 8-hour day; stand and/or walk for up to 2 hours at a time and a total of 6 hours in an 8-hour day; occasionally climb ladders; frequent climbing of ramps and stairs, and frequent stooping, kneeling, crouching and crawling; frequent handling and reaching in all directions with the right dominant upper extremity; no work at unprotected heights; and, can occasionally work around moving mechanical parts.

[*Id.*]

Under step four, the ALJ found that Plaintiff was able to perform past relevant work. [AR 25] The ALJ supported her decision based in part by the testimony of the vocational expert and related hypotheticals. [*Id.*] Thus, the ALJ concluded that Plaintiff was not disabled. [AR 26]

## V.    ISSUE ON APPEAL

In appealing the ALJ's decision, Plaintiff argues that the ALJ erred by failing to: (1) properly incorporate Plaintiff's impairment of fibromyalgia into the RFC determination; (2) apply the correct legal standard or provide sufficient explanation

when evaluating Plaintiff's subjective complaints of pain; (3) appropriately weigh opinion evidence; and (4) adequately address Plaintiff's alleged severe impairments. Due to the construction of the arguments, I first analyze the evaluations of Plaintiff's credibility.

### A. Evaluation of subjective complaints of pain

Plaintiff argues that the ALJ erred by not following applicable laws and regulations concerning her analysis of Plaintiff's subjective complaints of pain. Plaintiff claims that the ALJ relied on the lack of substantiation between objective medical evidence and Plaintiff's subjective pain. ECF No. 16 at 22. In doing so, Plaintiff contends that the ALJ disregarded or misinterpreted other considerations, such as Plaintiff's limited daily activities, her attempts of treatment, and evidence connecting her pain to her limited work abilities. *Id.* at 23–24.

Subjective complaints of pain are considered by the ALJ in evaluating whether a claimant has a disability. 20 C.F.R. §§ 404.1529, 416.929. Credibility determinations are particularly suited to the finder of fact and must be supported by substantial evidence. *Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010). A claimant's subjective allegation of pain is not by itself sufficient to establish disability. *Franklin v. Astrue*, 450 F. App'x 782, 789 (10th Cir. 2011) (quoting *Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993)) (unpublished).

Instead, the ALJ must determine: (1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if there was a "loose nexus" between the impairment and the subjective allegations of pain; and (3) when considering all the evidence, whether the pain was in fact disabling. *Id.* (quoting

*Musgrave v. Sullivan*, 966 F.2d 1371, 1375–76 (10th Cir. 1992)); *see* SSR 96-7p,

1996 WL 374186 at *4 (Jul. 2, 1996)) ("When evaluating the credibility of an

individual's statements, the adjudicator must consider the entire case record and

give specific reasons for the weight given to the individual's statements.").

The ALJ must consider a variety of factors in determining credibility,

including

> 1.[t]he individual's daily activities; 2.[t]he location, duration, frequency,
> and intensity of the individual's pain or other symptoms; 3. [f]actors that
> precipitate and aggravate the symptoms; 4.[t]he type, dosage,
> effectiveness, and side effects of any medication the individual takes or
> has taken to alleviate pain or other symptoms; 5.[t]reatment, other than
> medication, the individual receives or has received for relief of pain or
> other symptoms; 6.[a]ny measures other than treatment the individual
> uses or has used to relieve pain or other symptoms (e.g., lying flat on his
> or her back, standing for 15 to 20 minutes every hour, or sleeping on a
> board); and 7.[a]ny other factors concerning the individual's functional
> limitations and restrictions due to pain or other symptoms.

*Hamlin v. Barnhart*, 365 F.3d 1208, 1220 (10th Cir. 2004) (citing SSR 96-7p, 1996

WL 374186 at *3) (alterations in original).

However, an ALJ does not necessarily err if she does not discuss in detail

testimony of a claimant's "symptoms, limitations, daily activities, and lack of

improvement with treatment." *Megginson v. Astrue*, 489 F. App'x 260, 263 (10th

Cir. 2012) (unpublished). The ALJ need not recite a formalistic factor-by-factor

recitation of the evidence, but must merely set forth the specific evidence she relies

upon in evaluating the claimant's credibility. *Id.* (quoting *Qualls v. Apfel*, 206 F.3d

1368, 1372 (10th Cir. 2000)).

Here, the ALJ explained that Plaintiff began to take Lyrica for fibromyalgia

and "reported improvement in October 2014." [AR 23] The ALJ continued that

12

Plaintiff had no neurologic findings, "had full back range of motion and really no significant objective findings" from November 2014 to October 2015. [*Id.*] The ALJ noted that Plaintiff continued to receive injections from Dr. Fuller regarding back pain. [*Id.*] Separately, the ALJ rejected Plaintiff's argument that the ALJ should not consider Dr. Fuller's finding of high percentages of improvement regarding the injections. [AR 22] The ALJ rejected this argument because: (1) since the percentages varied, it was likely not repeated "canned" language and (2) the ALJ presumed that if the injections were not benefitting Plaintiff, Plaintiff would have stopped receiving them. [*Id.*]

Plaintiff raises multiple issues with the ALJ's analysis of Plaintiff's credibility regarding her pain. First, Plaintiff argues that the finding was flawed because the ALJ presumed that the injections were working because she continued to receive them. ECF No 16 at 23. Second, Plaintiff contends that the ALJ should have recognized that while she indeed took Lyrica for fibromyalgia, she also was on a variety pain medications to assist with her pain. ECF No. 16 at 24.

Concerning Plaintiff's use of pain medicine, as mentioned *supra*, the ALJ need not discuss every piece of evidence. However, in addition to discussing the evidence supporting her decision, the ALJ also must discuss the uncontroverted evidence she chooses not to rely upon, as well as significantly probative evidence she rejects. *Clifton v. Chater*, 79 F.3d at 1010. In this case the ALJ should have at least explained why Plaintiff's use of pain medicine did not contribute to her credibility regarding pain. *See* 20 C.F.R. § 404.1529(c)(3)(iv). This is especially true

considering Plaintiff's fibromyalgia. As explained *infra*, fibromyalgia is not based on objective findings, so considering the effect of Plaintiff's use of medication seems of significant importance in analyzing her credibility. *Cf. Tarpley v. Colvin*, 601 F. App'x 641, 643 (10th Cir. 2015) (upholding the ALJ's determination in part because the ALJ considered the effects of medication on the plaintiff's symptoms) (unpublished); *cf. Glenn v. Apfel*, 102 F. Supp. 2d 1252, 1259 (D. Kan. 2000) (finding that the record did not support the ALJ's credibility determination of the plaintiff when the ALJ, in part, did not discuss side effects of medication). Therefore, the ALJ must reanalyze Plaintiff's credibility to consider her use of pain medication.

Concerning the injections, an ALJ may make reasonable assumptions, but they cannot substitute for evidence. *Pinnt v. Chater*, 988 F. Supp. 1354, 1360 (D. Colo. 1997) (citing Soc. Sec. Rep. Serv., Rulings 1983–1991, 432 (West 1992)); *cf. Young v. Barnhart*, 146 F. App'x 952, 955 (10th Cir. 2005) (the ALJ did not err, in part, because he did not make speculative inferences) (unpublished). The ALJ seemed to heavily rely upon Dr. Fuller's notations of improvement. Whether this was an appropriate inference should be reconsidered when the ALJ reconsiders Plaintiff's credibility in light of her use of pain medication.

### B.  Incorporation of fibromyalgia into the RFC determination

Plaintiff argues that while the ALJ determined that Plaintiff's fibromyalgia was a severe impairment, the ALJ did not sufficiently consider fibromyalgia when determining Plaintiff's RFC. ECF No. 16 at 18–19. Plaintiff continues that the ALJ misunderstood the unique nature of fibromyalgia in that it is necessarily unaccompanied by objective evidence of physiological abnormalities. *Id.* at 20.

SSA responds that the ALJ recognized Plaintiff's fibromyalgia as a severe impairment and then accurately discussed the actual functional limitations caused by it. ECF No 17 at 6. SSA points to evidence in the record showing where Plaintiff was noted to have full range of motion, full or normal strength, and normal "coordination, station, and gait." *Id.* at 7. SSA clarifies that while a lack of physiological anomalies should not be a basis to find that fibromyalgia is not a *severe* impairment, it is a reasonable to base a finding that fibromyalgia is not a *disabling* impairment on such anomalies. *Id.* at 8.

Fibromyalgia "is a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months." SSR 12-2p, 2012 WL 3104869, at *2 (July 25, 2012). It presents a conundrum to diagnose because "[i]ts cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective." *Gilbert v. Astrue*, 231 F. App'x 778, 783 (10th Cir. 2007) (quoting *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996)) (unpublished).

Under SSR 12-2p, an ALJ may find that a claimant has a medically determinable impairment of fibromyalgia if three requirements are met: (1) a history of widespread pain; (2) "[a]t least 11 positive tender points on physical examination"; and (3) "[e]vidence that other disorders that could cause the symptoms or signs were excluded." 2012 WL 3104869, at *2–3 (July 25, 2012). For a person with fibromyalgia, an ALJ considers "a longitudinal record whenever possible because the symptoms of [fibromyalgia] can wax and wane so that a person

may have 'bad days and good days.'" *Id.* at *6.

Here, the ALJ indeed found Plaintiff to have the severe impairment of fibromyalgia, but did not find that it met a listed impairment such that it summarily proved Plaintiff disabled. [AR 20] The ALJ referenced SSR 12-2p in her analysis and focused not only on objective evidence, but also Plaintiff's subjective reports on her condition. [AR 23–24] The ALJ noted that Plaintiff reported improvement when she began to take Lyrica, indicated improvement in her fibromyalgia following injections, and exhibited normal mood and affect as well as normal concentration and attention. [AR 23] She indeed referenced MRI and neurologic findings, but also noted when Plaintiff complained of pain. [*Id.*]

This does not seem to be an analysis where the ALJ abjectly misunderstood how fibromyalgia affects the body. *See Benecke v. Barnhart*, 379 F.3d at 587, 594 n.3 (9th Cir. 2004) (reversing and awarding benefits to the plaintiff when the ALJ expressed open skepticism during the hearing on how fibromyalgia could ever be diagnosed with the absence of objective evidence). However, as discussed *supra*, Plaintiff's use of pain medicine was not analyzed in the ALJ's decision, and that could indeed be an important factor when considering her fibromyalgia.

The ALJ stated that "while this evidence generally reflects ongoing subjective pain symptoms, it does not contain objective findings to substantiate the severity in pain and resulting functional limitations described by the claimant." [AR 23–24] This analysis was in the context of determining Plaintiff's RFC, not in deciding whether Plaintiff was summarily disabled by fibromyalgia. [*Id.*] However, since I

am remanding so the ALJ can reevaluate Plaintiff's credibility regarding her pain, this could change the RFC consideration. As such, the ALJ must reformulate Plaintiff's RFC based on the reevaluation of Plaintiff's credibility.

### C. Evaluation of opinion evidence

Plaintiff argues that the ALJ failed to give appropriate weight to the opinion of the consultative examiner Stanley Ginsburg, M.D. Plaintiff explains that the ALJ discounted Dr. Ginsburg's opinion because it was based on the subjective complaints of Plaintiff, which the ALJ had found out of proportion to the objective findings existing at the time of Dr. Ginsburg's examination. ECF No. 16 at 26. Plaintiff argues that this was error because the ALJ was not considering fibromyalgia, whose existence would not be confirmed by objective medical records. *Id.* Additionally, Plaintiff argues that the ALJ had to base her weight of Dr. Ginsburg's opinion not only on support from objective medical evidence, but also on other factors promulgated by SSA. *Id.*

In his exam report, Dr. Ginsburg diagnosed: (1) "[s]evere back pain with history of lumbar surgery and current pain and lumbar radicular syndrome"; (2) "[b]y history common extensor tear right upper extremity"; and (3) depression. [AR 739] He noted that Plaintiff "groan[ed]" during much of the examination and found her motor strength normal even though "there was a great deal of difficulty in testing the claimant because of giving out cries of pain when I applied only gentle pressure." [AR 738–39] He found in part that Plaintiff could stand or walk up to two hours due to her severe back pain, could sit up to four hours, and could lift 20 pounds occasionally and 10 pounds frequently. [*Id.*]

17

The ALJ did not give full weight and found Dr. Ginsburg's opinion "unpersuasive in establishing any greater restrictions on work functioning that found in [the ALJ's] decision." [AR 24] The ALJ reasoned that there was an "absence of significant objective findings to support the claimant's rather extreme subjective complaints" and held that Dr. Ginsburg's opinion seemed "to be based largely on the claimant's subjective complaints, which seem out of proportion not only to the objective findings noted by Dr. Ginsburg but also throughout available medical treatment records over time." [*Id.*]

An ALJ must consider every medical opinion and discuss the weight she assigns to the opinion. *Thomas v. Berryhill*, 685 F. App'x 659, 662 (10th Cir. 2017) (quoting *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012)) (unpublished). Specific factors are considered including: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527, 416.927.

While the ALJ need not explicitly discuss each individual factor, see *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007), the ALJ must "give good reasons in the notice of determination or decision for the weight he [or she] ultimately assigns

the opinion." *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003).

Here, the ALJ seemed to base her weight of Dr. Ginsburg's opinion on a lack of corroborating objective evidence. [AR 24] As support, the ALJ reasoned that the objective evidence misaligned with Plaintiff's subjective complaints. [*Id.*] Focusing heavily on objective evidence in the context of fibromyalgia is improper. *See Gilbert v. Astrue*, 231 F. App'x at 784 (remanding due to the ALJ assigning improper weight to a medical opinion because the ALJ did not sufficiently address the plaintiff's fibromyalgia when considering the assigned weight); *cf. Richardson v. Astrue*, 858 F. Supp. 2d 1162, 1175 (D. Colo. 2012) (the ALJ "erred by discounting all of Plaintiff's symptoms from fibromyalgia based on the lack of objective tests.").

Since I am remanding for the ALJ to reconsider Plaintiff's subjective credibility, this could change the analysis of the weight given to Dr. Ginsburg's exam, and as such, the weight given to Dr. Ginsburg's exam should be reevaluated as well.

### D. Plaintiff's alleged severe impairments

Finally, Plaintiff argues that the ALJ did not sufficiently analyze Plaintiff's ailments in the second step of the SSA's five-step disability determination. Namely, Plaintiff contends that the ALJ should have analyzed Plaintiff's depression and anxiety, irritable bowel syndrome, and knee pain to decide whether they were medically determinable or severe. ECF No 16 at 28–29.

SSA responds that Plaintiff did not mention any mental impairment as a potential basis for disability in neither her application nor in any hearing. ECF No. 17 at 14–15. SSA continues that even if the ALJ should have identified mental

diagnoses in her decision, the record does not support a finding that these were medically determinable. *Id.* at 16. SSA adds that Plaintiff's irritable bowel syndrome and knee pain similarly did not actually affect her functioning, and thus no error was committed. *Id.* at 17–18.

During step two of SSA's five-step inquiry, a claimant bears the burden to demonstrate an impairment or combination of impairments significantly limits her ability to do basic work activities. *Williamson v. Barnhart*, 350 F.3d 1097, 1099 (10th Cir. 2003); *see* 20 C.F.R. §§ 404.1520(c), 416.920(c). "The step two severity determination is based on medical factors alone, and 'does not include consideration of such vocational factors as age, education, and work experience.'" *Williamson v. Barnhart*, 350 F.3d at 1100 (quoting *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988)). This showing must be characterized as "de minimis," but "the mere presence of a condition is not sufficient to make a step-two showing." *Id.* (citing *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997)).

Here, I agree with SSA that Plaintiff did not sufficiently raise these medical concerns such that the ALJ needed to analyze them. It is Plaintiff's burden, especially when represented by counsel as she was here, "to identify the issue or issues requiring further development." *Cowan v. Astrue*, 552 F.3d at 1188 (quoting *Hawkins v. Chater*, 113 F.3d 1162, 1167–68 (10th Cir. 1997)).

In her Reply, Plaintiff argues that since SSR 12-2p "lists manifestations of anxiety and depression as 'especially' strong indicators" of fibromyalgia, the ALJ should have considered these during step two or in her RFC. ECF No. 18 at 3–4.

However, at step two, "the ALJ looks at the claimant's impairment or combination of impairments only and determines the impact the impairment would have on [her] ability to work." *Hinkle v. Apfel*, 132 F.3d at 1352. It follows that if Plaintiff did not sufficiently identify a medical issue that she thought the ALJ should consider, it was not error if the ALJ did not consider it.

Concerning irritable bowel syndrome, Plaintiff argues that the ALJ mentioned the symptoms during step four, which means she should have discussed it additionally under step two. ECF No. 16 at 28. Plaintiff points to no case law that establishes that all symptoms discussed in step four must be analyzed in step two, nor does she point to the record to show a de minimis showing that irritable bowel syndrome should have been medically determined by the ALJ. Additionally, I agree with SSA that Plaintiff only identified irritable bowel syndrome as an issue during her hearing, but she does not point to an actual diagnosis. ECF No. 17 at 17; *see* 20 C.F.R. §§ 404.1508, 416.908 ("A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms . . . .").

Concerning her knee, Plaintiff disputes the ALJ's finding that there was no objective or diagnostic evidence to prove that her knee pain was medically determinable. ECF No. 16 at 28. The ALJ relied on X-rays showing Plaintiff's knees to be normal. [AR 20] Plaintiff argues that this is inappropriate considering the ALJ's recognition of Plaintiff's fibromyalgia. ECF No. 16 at 28. Plaintiff is correct that there are records in evidence showing that Plaintiff had knee pain. [AR 408, 483, 703]

However, Plaintiff does not point to diagnostic or objective evidence of knee pain, nor to any legal reason why the ALJ should have found her knee pain to be medically determinable besides a summary argument that Plaintiff has fibromyalgia. As such, the ALJ did not err in her determinations in step two.

## VI.   CONCLUSION

For the above reasons, SSA's decision is REVERSED, and this case is REMANDED for proceedings consistent with this opinion. The ALJ must reconsider Plaintiff's credibility by accounting for Plaintiff's use of pain medication. From there, the ALJ must reconsider aspects of her decision that are logically connected to her determinations of Plaintiff's credibility, including the extent of Plaintiff's fibromyalgia and how that influences Plaintiff's RFC and the weight given to Dr. Ginsburg's examination.

Dated: November 20, 2018, in Denver, Colorado.

BY THE COURT:

s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE